## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kenneth Seifert d/b/a The Hair Place and Harmar Barbers, Inc., individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>IMT Insurance Company,<br><br>                    Defendant. | Court File No. 0:20-cv-01102-JRT-DTS |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I.     INTRODUCTION

Plaintiff filed this lawsuit to obtain reimbursement for his losses pursuant to his Businessowner's Insurance Policy issued by Defendant. During the years that Defendant insured Plaintiff, he paid an additional premium to insure against any business income loss.  Plaintiff has pleaded a detailed and plausible claim for coverage and Defendant's Motion to Dismiss should be denied and the Court should construe the policy as providing coverage to Plaintiff.

## II.    FACTUAL BACKGROUND

Plaintiff owns two hair salons in Minnesota.  One, The Hair Place, is a hair salon in Kenyon, Minnesota. Doc. 1. at ¶1-2. The other, Harmar Barbers, Inc., is a traditional barber shop in St. Paul, Minnesota.  *Id.*  Plaintiff purchased Businessowner's insurance from Defendant, including Business Income Interruption – to cover both his businesses. Each of these policies are "all risk" policies – policies that cover all risks of loss except those that are expressly and specifically excluded.  *Id.* at ¶14.

When Minnesota Governor Tim Walz declared a Peacetime Emergency and a subsequent series of directives, Plaintiff was forced to close his businesses to the public for an extended period.  Plaintiff lost the use of his insured property and this forced closure caused Plaintiff to lose business access to his properties and to cease operations during a period of required suspension.  As a direct result he suffered a loss of business income.

Given the insurance for which he paid regular premiums, Plaintiff contacted his insurance agent and indicated his desire to file a claim for his lost business income.  *Id.* at

2

¶27.  The agent told him that Defendant would not cover his loss.  *Id.* Plaintiff then filed this action seeking to recover against Defendant under the policy.

## III.   ARGUMENT

Plaintiff filed this Complaint against Defendant for denying coverage for business losses insured under his all-risk policy. Although Defendant suggests various reasons about why Plaintiff's Complaint should be dismissed, not one of these arguments can prevail under the law and Defendant's Motion to Dismiss must be denied.  Because the policy language is ambiguous at best, the Court should construe the policy against Defendant and in favor of coverage.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plaintiff easily satisfies this burden.

### a.   Plaintiff Made a Claim

Defendant's first argument – that Plaintiff's Complaint should be dismissed because it "fails to allege compliance with the insured's duty to prove prompt notice of a claim," Doc. 12 at p. 15, is meritless.  On its own website, Defendant explains how to submit a claim  – telling its insureds to contact their independent agent. *See, e.g.,* https://www.imtins.com/claims/  (last visited June 13, 2020).  That is exactly what

3

Plaintiff did here, he called his agent to make a claim and the agent told him that Defendant would not provide coverage.  Doc. 1 at ¶27.  Nothing more is required.[1]

But if that were not enough, the Policy itself states that notice to the agent is sufficient.  *See* 13-1 at p. 189 (stating "The requirement to notify us can be satisfied by notifying our agent. Notice can be by any means of communication.").  Defendant has not asserted that the agent mistakenly denied the claim or misrepresented the Defendant's position.  Indeed, Defendant could not credibly take such a position.

Minnesota law provides that "[a] person performing acts requiring a producer license under this chapter is at all times the agent of the insurer and not the insured." Minn. Stat. §60K.49, subd. 1. Representations made by an agent will bind the insurer if the agent has actual, implied, or apparent authority to make such representations, *see Hemingway v. First Nat. Ins. Co. of Am.*, 2014 WL 2864919, at *4 (D. Minn. June 24, 2014) (citing *Graff v. Robert M. Swendra Agency, Inc.,* 800 N.W.2d 112, 117 (Minn. 2011), and the question of whether an agent "was clothed with apparent authority" is a question of fact for the jury. *See, e.g., BMT Enterprises, Inc. v. Hartford Cas. Ins. Co.*, 2012 WL 2884862, at *8 (D. Minn. July 13, 2012) (citing *McGee v. Breezy Point Estates,* 166 N.W.2d 81, 89 (Minn. 1969).  Here, Plaintiff's insurance agent (whom Defendant

---

[1] Even if Defendant's agent failed to communicate the claim to Defendant, this lawsuit certainly constitutes direct notice of his claim under the policy which allows notice by any means. Defendant's motion to dismiss evinces its understanding of the claim and the facts in support and makes clear that no coverage will be authorized absent intervention by the Court.  Defendant's notice argument is simply without basis.

instructed Plaintiff to contact) explained that Defendant was not paying claims for loss of business income.  Defendant's arguments to the contrary should be rejected.

      **b.**     **Plaintiff Suffered a Physical Loss of Property**

Defendant spends the bulk of its brief arguing that Plaintiff is not entitled to coverage because he has not identified a "direct physical loss of or damage to covered property at the insured premises."  Doc. 12 at 16.  This is simply not the case.  "Loss of" or "damage to" in the policy is in the conjunctive.  Plaintiff has very plainly pleaded a direct physical "loss of" property, and Defendant has contracted to pay for this loss. The property quite clearly was lost to the Plaintiff as a result of the Executive Orders issued by Governor Walz beginning in March.  His inability to access his property legally, the insured premises, for the conduct of his business is a "direct physical loss of …property" which is the heart of what is covered under the policy.

Similarly the Business Income clause of the Policy provides coverage for loss caused by a necessary suspension of operations due to, (again in the conjunctive) "direct physical loss of or damage to property" during the period of forced inability to use, or, in the terms of the policy, "restoration."   Again, the critical language is "loss of."  If "loss of" meant the same as "damage to," Defendant could have skipped one or the other.  If the insurer meant to only cover losses of property *due to* a physical damage to the premises, it plainly could have said so.  But "physical" modifying "loss" and "physical" modifying "damage" do not necessarily mean the same thing.  Merriam-Webster defines loss as "destruction or ruin" as well as "the act of losing possession, deprivation." *See,* https://www.merriam-webster.com/dictionary/loss.   It is up to the insurer to write a clear

policy. If it intended to mean by "physical loss," "destruction or ruin," it could have said so.  Instead it used the broader phrase "loss of".  Under the word chosen by the insured, coverage exists for loss of possession or deprivation.

Defendant seeks to avoid coverage under this plain language reading of the coverage clause by choosing to employ a narrower meaning of the terms they chose.

### i.     Relevant Policy Language

In this case, the relevant policy language begins this way:
SECTION I – PROPERTY

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph a. below, Business Personal Property as described under Paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property.  Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph 2. Property Not Covered

**a.**     Buildings…

**b.**     Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

**(1)**     Property you own that is used in your business; …

**2. Property Not Covered**

Covered Property does not include:…

**3. Covered Causes of Loss**

6

Direct physical loss unless the loss is excluded or limited under Section I – Property

**4. Limitations …**

**5. Additional Coverages**

      **a.**      **Debris Removal…**

      **b.**      **Preservation of Property…**

      **c.**      **Fire Department Service Charge…**

      **d.**      **Collapse…**

      **e.**      **Water Damage, Other liquids, Powder or Molten Material Damage…**

      **f.**      **Business Income**

      **(1) Business Income**

      (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your operations during the period of restoration.   The suspension must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set for in the preceding paragraph, if you occupy only part of a building your premises mean:

            (i)      The portion of the building which you rent, lease, or occupy

            (ii)      The area within 100 feet of the building or within 100 feet of the premises described in the declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

            (iii)      Any area within the building or at the described premises, if that area services

7

or is used to gain access to, the portion of
the building which you rent, lease or
occupy.

### ii.        Applicable Policy Interpretation

Plaintiff advances three separate, alternative interpretations of this policy – each
one resulting in the coverage Plaintiff has claimed.  First, Plaintiff asserts that the
location of "Business Income" within the structure of the Policy renders it a stand-in for
"Covered Property" and thus, having a "loss of" business income satisfies the Policy's
language under "Coverage." Second, Plaintiff asserts that the loss of use of his business
personal property under the Policy satisfies the Policy's language under "Coverage."
And finally, at the very least, Plaintiff suggests that the interaction between these clauses
is ambiguous, and thus it is undisputed that that ambiguity must be construed in favor of
coverage.

In interpreting an insurance contract, the contract is to be construed as a whole.
*Horizon III Real Estate v. Hartford Fire Ins. Co.*, 186 F. Supp. 2d 1000, 1004 (D. Minn.
2002).  Any apparent conflicts between clauses will be resolved by giving full effect to
principal and more important clauses and subordinating thereto those of minor
importance. *Qwinstar Corp. v. Anthony,* 882 F. 3d 748, 755 (8th Cir. 2018) (citations
omitted). In this Policy, "Business Income" falls within the "Additional Coverages"
section of "SECTION I – PROPERTY."  Because "Additional Coverages" is subordinate
only to "Coverage" in the hierarchical structure of the Policy, and is equal in positioning
to "Covered Property," the only plausible reading of the Policy is that the Business
Income [due to necessary suspension of operations] is, itself, a covered property and only

8

subject to the Coverage definition superior to it. Thus, the reading must be "We will pay for any direct physical loss of or damage to [Business Income] at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."[2]

With that in mind, the next determination must be, whether a "Covered Cause of Loss" caused or resulted in the loss of Business Income. The Policy defines "Covered Cause of Loss" as a "direct physical loss unless the loss is excluded or limited under Section I – Property." This definition renders the Policy most accurately read as follows: We will pay for any direct physical loss of or damage to [Business Income] at the premise described in the Declarations caused by or resulting from any direct physical loss unless the loss is excluded or limited under Section I – Property. Defendant's reading of the Policy would render the location of the Business Income clause as well as the additional premium paid for it meaningless by applying an *additional* demonstration of loss. Defendant's brief itself begins to suggest that the "Business Income" cannot be covered property – stating that "direct physical loss of or damage to property at the described premises is an absolute requirement to trigger Business Income coverage…" Doc. 12. at 17. But they then go on to say that "[o]n top of that, the Business Income loss must be caused by or result from a Covered Cause of Loss." Doc. 12 at 17.

---

[2] To be clear, Plaintiff recognizes that the Business Income Defendant covers with their applicable policy is only that income that is lost throughout his "suspension of operations during the period of restoration." The language modifying the suspension in that section is exactly the same as the language modifying coverage "direct physical loss of or damage to," and as such the clauses can be read in tandem.

Plaintiff has adequately pleaded a plausible claim that the coverage under his policy was triggered when he experienced a "physical loss" of his Business Income. But Plaintiff's contention that Business Income is correctly read as the covered property, is not the only avenue to coverage. Coverage is also afforded under the Business Personal Property section of the Policy, specifically included under § A.1.b.(1) of the Property section. This section of the Policy explains that "Covered Property" includes: "Business personal Property located in or on the buildings or structures at the described premises" including "property you own that is used in your business."[3]  Here, Plaintiff has experienced a direct physical loss of his business personal property in that it is unavailable for him to use on clients to continue his livelihood.

Plaintiff's two properties both provide hair-cutting and styling services.  As such, they both contain business personal property specific to that use (e.g. barber chairs, shears, shampoo sinks etc.).  There can be no doubt that this property qualifies as business personal property under the Policy's definition – as it is "property [Plaintiff] own[s] that is used in [Plaintiff's] business."  Further, it is clear that the Plaintiff experience a loss of that business personal property when he was no longer allowed to provide the haircutting and salon services this property was made to facilitate.

---

[3] To the extent that Defendant advances a rebuttal that the "use" of property is somehow not an issue here, the applicable Declarations clearly define and describe the premises as a "barbershop." Because Defendant chose to include the purpose of the insured premises on the Declaration, it is certainly relevant.  Additionally, Defendant goes out of its way to specifically exclude damages caused by the enforcement of or compliance with any ordinance or law… regulating the construction, use, or repair of any property.  Thus, if the loss of use of the property were not contemplated by the "loss of" phrasing under Coverage – this modification would be unnecessary.

Minnesota courts that have grappled with the physical loss phrase as it relates to insurance claims have found that direct physical loss can exist without actual destruction of or structural damage to property.  Indeed, it is sufficient to show that insured property is impaired in some way.  *General Mills, Inc. v. Gold Medal Ins. Co*., 622 N.W.2d 147, 152 (Minn.App. 2001) *(citing Sentinel Mgmt. Co. v. New Hampshire Ins. Co*., 563 N.W.2d 296, 300 (Minn.App.1997))*.

In *General Mills*, the Court found that the insured's inability to lawfully distribute its products resulted in a direct physical loss of or damage to property and that such inability was an impairment of function and value sufficient to support a finding of physical damage. *Gen. Mills, Inc. v. Gold Medal Ins. Co*., 622 N.W.2d 147, 152 (Minn.App.2001).  Here, the product Plaintiff distributed was the haircuts and salon services.  Similar to *General Mills,* Plaintiff was unable to lawfully perform its services, which has resulted in a direct physical loss of Plaintiff's business income.

The Minnesota Supreme Court explained that, under a policy with a nearly identical, undefined phrase "direct physical loss of or damage" that "physical loss" can mean "those situations where an external force has rendered the property unsafe or *unusable*, even though the property remains physically unchanged." *Cedar Bluff Townhome Condominium Assoc., Inc. v. Am. Family Mutual Ins. Co.,* 857 N.W.2d 290, 295 (Minn. 2014) (emphasis added).

Defendant acknowledges that the Policy does not define  "direct physical loss of or damage to property" and, thus, suggests a variety of dictionary definitions for the so called "unambiguous words" used (and not used) in the relevant sections of the Policy.

11

Doc. 12 at 18-19.  Defendant then concludes that "'physical loss or damage'[4] means damage in the sense of actual physical alteration to tangible property.'" *Id.* at 19.[5] Defendant, however, fails to construe the relevant terms in the context of the policy as a whole and, mistakenly, isolates certain words and phrases while entirely ignoring others. Specifically, Defendant ignores the plain language of the Policy which includes "physical loss of or damage to the property" and instead collapses the two components into a singular direct physical damage requirement.  Indeed, Defendant's narrow interpretation and effort to re-write (or ignore) certain terms is improper.

Words have meaning.  Here, the phrase states "We will pay for direct physical loss *of or* damage to Covered Property." (emphasis added).  While the "of" and "or" are the smallest words in that phrase – they provide big meaning. Indeed, the Eighth Circuit has held that the words "of" rather than "to" in the context of a direct physical loss clause, can significantly impact the definition and/or interpretation of the phrase.  *See Source*

---

[4] It is important to note here that Defendant appears to be indiscriminately switching between the "physical loss of or damage to" phrase defining Coverage and the "physical loss" language in the Covered Cause of Loss section. Because Defendant provides a separate section in their brief related to the Covered Cause of Loss element, Plaintiff assumes this is in error and the "physical loss of or damage to" language is the appropriate phrase for this analysis.

[5] The fact that Defendant is put to defending its denial of coverage by resorting to language in Dictionaries as opposed to clear definitions in the Policy of insurance itself is telling.  If Defendant wished to limit coverage to "actual physical alteration to tangible property" the place to put that language was in the Policy.  Instead, Defendant chose to provide coverage for "loss **or** damage to" where loss clearly has the generally accepted meaning of including "deprivation." Interpreting a policy of insurance should not be a Talmudic exercise nor should insurers be permitted to bait and switch the scope of coverage with post hoc explanations of "this is what we really meant."

*Food Technology, Inc. v. U.S. Fidelity and Guar. Co.,* 465 F.3d 834, 838 (8th Cir. 2006). Turning to Webster's dictionary (as did Defendant), "or" is a function word used to indicate an alternative. *See, e.g.* Merriam Webster https://www.merriam-webster.com/dictionary/or. Thus any "loss of" property is a separate or alternate, triggering condition from "damage to" property.

Under Minnesota law, courts interpret an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties, while unambiguous language is given its plain and ordinary meaning. *Thommes v. Milwaukee Ins. Co*., 641 N.W.2d 877, 879–80 (Minn. 2002). However, when the language is ambiguous, the language is construed against the drafter and in favor of the insured. *Nathe Bros. v. Am. Nat'l Fire Ins. Co*., 615 N.W.2d 341, 344 (Minn. 2000). More specifically, "[w]here an insurance contract is ambiguous, the court applies the doctrine of *contra proferentem*, by which ambiguities in a document are to be construed unfavorably to the drafter or in favor of coverage." *General Mills, Inc. v. Gold Medal Ins. Co*., 622 N.W.2d 147, 151 (Minn. App. 2001). Thus, if there are two reasonable interpretations of the same language, the Court must favor the pro-coverage view. *See Carlson Marketing Group, Inc. v. Royal Indem. Co.*, 517 F. Supp. 2d 1089, 1097 (D. Minn. 2007) ("Policy language is ambiguous if it can reasonably be interpreted in more than one way. Ambiguous policy language will be construed against the insurer."). Plaintiff submits that his interpretation of the Policy is correct. At the very least however, to the extent that conflict arises between Plaintiff's interpretation and Defendant's interpretation, the policy is ambiguous and the Court must construe the language in Plaintiff's favor.

### c.      Plaintiff Alleges a Covered Cause of Loss

Having established the physical loss of a covered property, Plaintiff next disputes Defendant's contention that any exclusion applies in this case.  As the Defendant notes, the Policies define a "covered cause of loss" as a "[d]irect physical loss unless the loss is excluded or limited[.]" Doc. 13-1 at p. 78.  Defendant suggests that three separate exclusions prohibit Plaintiff's claim. However, this suggestion is draws upon faulty assumptions.  As developed below, the three exclusions identified by Defendant – "virus or bacteria," "pollutant," or "ordinance or law" – are not applicable to Plaintiff's claims and thus do not bar his requested coverage. Under Minnesota law, the insurer carries the burden of demonstrating that a policy exclusion applies.  *See, e.g., Jerry's Ent., Inc., v. U.S. Specialty Insurance Co.,* 845 F.3d 883, 887 (8th Cir. 2017).  Here Defendant has made many assertions that the exclusions apply but has not carried their burden on this motion to dismiss.

### i.      Virus or Bacteria

Defendant identifies the Virus or Bacteria Exclusion as a bar to Plaintiff's claims. Plaintiff's policy states that Defendant "will not pay for loss or damage caused directly or indirectly by … [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress illness or disease."  Cases that have dealt with the applicability of a "virus or bacteria" exclusion have done so when the *presence* of the bacteria is at a covered location or in a covered product.  *See, e.g. Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc.,* 105 F.Supp.3d 464, 472 (E.D.Pa. 2015) (finding virus and

14

bacteria exclusion applied when patient was exposed and infected with bacteria at defendant's place of business). Here, there is no claim that COVID-19[6] nor that any virus, bacteria, or microorganism caused his loss.  In fact, Defendant acknowledges this noting that: "Seifert's Complaint claims that Harmar Barbers and The Hair Place sustained business income loss due to Governor Walz's executive orders." Doc. 12 at p. 26.

Exclusions in insurance contracts must be construed narrowly and strictly against the insurer and in accordance with the expectations of the insured.  *Grinnell Mut. Reinsurance Co. v. Villanueva*, 37 F. Supp. 3d 1043, 1046 (D. Minn. 2014), aff'd, 798 F.3d 1146 (8th Cir. 2015) (citations omitted). And when interpreting insurance contracts, the objective is to "ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract." *Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn.1997). "Where the language of an insurance policy 'is clear and unambiguous,' we effectuate the intent of the parties by interpreting the policy according to plain, ordinary sense." *Eng'g & Const. Innovations, Inc. v. L.H. Bolduc Co., Inc.,* 825 N.W.2d 695, 704–05 (Minn. 2013) (citations omitted). An insurance policy is ambiguous, however, "if it is susceptible to two or more reasonable interpretations." *Id*. "We resolve ambiguous terms

---

[6] Defendant suggests that several reputable disease control organizations have identified COVID-19 as a virus. Doc. 12 at p. 26.  However, COVID-19 is technically the name of the disease caused by a virus.  The virus has been identified as SARS-CoV-2.  *See, e.g.* https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it (Last visited Jun. 16, 2016). This technicality is significant because it adds an additional distance  between the exclusion language of the contract and the actual cause of loss in this matter.

against the insurer, and construe such terms in favor of providing coverage to the
insured." *Id.* Here, there is no clear exclusion for closure orders which deprive the
insured of the use of physical property even where the closure order is connected to the
risk of infection caused by a virus.  The insurer is no doubt familiar with the specific risk
to the use of business property which may be occasioned by governmental action in the
face of a pandemic and that such a risk is different than a loss occasioned by actual
infection due to the presence of a bacteria or virus on the business premises. It could have
clearly and plainly excluded the former risk with direct language.  It did not. The burden
of articulating a clear exclusion lies with the insurer, not the insured.

On March 11, 2020, the WHO characterized COVID-19 as a pandemic.  In
Minnesota, Governor Walz declared a Peacetime Emergency. (Exec. Order 20-01 issued
Mar. 13, 2020).  After declaring a state of Peacetime Emergency, Governor Walz then
issued Emergency Executive Order 20-04 Providing for the Temporary Closure of Bars,
Restaurants, and Other Places of Public Accommodation on March 16, 2020. This Order,
again was related to the classification of COVID-19 as a "pandemic" and an "act of
nature," was done in an attempt to minimize the "threat to public health" and ensure
"healthcare facilities remain able to accommodate those who require intensive medical
intervention."  (Exec. Order 20-04 issued Mar. 16, 2020). Two days later, Governor Walz
clarified that Executive Order 20-04 also applied to "salons, barbershops, and similar
establishments." (Exec. Order 20-08 issued Mar. 18, 2020).

Defendant chose not to reference either "pandemic" or "public health emergency"
in the applicable polices which Defendant could have easily included.  *See, e.g., Meyer*

16

*Natural Foods, LLC, et al v. Liberty Mutual Fire Ins. Co.,* 218 F. Supp. 3d 1034, 1038

(D. Neb. 2016)  (dealing with policy that contained specific language in a contamination

exclusion not limiting to any epidemic, pandemic, influenza, plague, SARS, or Avian

Flu).  In interpreting an insurance contract, the contract is to be construed as a whole.

*Horizon III Real Estate v. Hartford Fire Ins. Co.*, 186 F. Supp. 2d 1000, 1004 (D. Minn.

2002).  Generally, the exclusions contained in the policy are related to elements that have

impacted the immediate property.  In other words, the exclusion's presence is felt at the

covered property.  There can no doubt that other exclusions contained in the same section

as the "virus and bacteria" exclusion here must have actually occurred *on* the property in

question.  For example, the "Earth Movement" exclusion would not be valid if the earth

under the Plaintiff's property had not moved and he had suffered a loss on the same day

as an earthquake in California. Because there is no evidence that any virus or bacteria

was present at Plaintiff's offices, Defendant cannot rely on speculation to make it so.

More importantly, the purpose of the Executive Orders that ultimately lead to

Plaintiff's loss of property was to enforce social distancing in an effort to allow the

healthcare industry the opportunity to better prepare its resources for managing care.  In

other words, the cause of Plaintiff's loss was the forced closure of his business due to the

Executive Orders that were created in an effort to preserve medical resources and attempt

to enforce social distancing to limit the a pandemic's ingestion of resources.  He did not

lose access to his property for its intended (and insured) use because a virus or bacteria

was on the property – nor has he alleged that was the cause of his loss.

### ii.        Pollutant Exclusion

Defendant next identifies the "Pollutant Exclusion" as a bar to Plaintiff's claims. However, this exclusion fares no better than the Virus and Bacteria exclusion for the exact same reasons.  Essentially, Defendant contends that, although this exclusion is superseded by the Virus and Bacteria Exclusion – if the Court fails to exclude Plaintiff's claims based on the virus exclusion, the pollutant exclusion steps in to apply.  This is simply a denial in search of a justification.  The pollutant exclusion has no applicability.

Defendant argues that, because Minnesota has recognized various living microorganisms as "pollutants," in other matters, the application of the term pollutants to COVID-19 thus precludes coverage.  Doc. 12 at p. 27.  However, as just discussed, we must examine the actual cause of the loss, which in this case, was a series of unprecedented public health determinations and executive orders preventing social contact to preserve health care resources; not contact with a pollutant, or the circulation or presence of pollutants on the Plaintiff's business premises.  No matter how Defendant would like to characterize COVID-19 as a virus or a pollutant – it was not the presence of some airborne contaminant at Plaintiff's facilities that Plaintiff alleged is it the cause of the loss.

### iii.       Ordinance and Law Exclusion

Finally, Defendant attempts to bar Plaintiff's claims under the Ordinance or Law Exclusion of the policy.  However, that exclusion does not apply to this situation. The exclusion states that Defendant will not cover damage caused by "the enforcement of or

compliance with any ordinance or law… regulating the construction, use, or repair of any property." Doc. 12 at p. 28.

Nowhere in either of the policies is the term "ordinance" or "law" defined.  Any ambiguity in the language of an insurance policy must be resolved against the insurer and in accordance with the reasonable expectations of the insured. *Columbia Heights Motors, Inc. v. Allstate Ins. Co*., 275 N.W.2d 32, 36 (Minn.1979). And an insurer has the burden of proving that a policy exclusion applies. *Hubred v. Control Data Corp*., 442 N.W. 2d 308, 310 (Minn. 1989).

Defendant employs the word "ordinance" and "law" in many different sections of the policy – sometimes these terms are modified with "local" other times there are additional terms surrounding them including "statute" or "regulation."  *See, e.g.*, Doc. 13-1 at pp. 26 and 114.  The reasonable objective intent of the terms "ordinance" and "law" are informed by the use of the adjectival phrase which modifies it; i.e. "regulating the construction, use, or repair."  The plain sense of the exclusion is to that of a pre-existing law or ordinance which is related to how a property can be built, improved, or customarily used.  Its application to ad hoc transitory orders emanating from a civil authority arising out of an unforeseen event is a stretch.  Employing such Civil Orders to deny coverage is particularly misguided because the policy elsewhere (as discussed below) makes reference to actions of a civil authority that prohibits access to a property (precisely what is at issue here); as a condition of coverage and not exclusion.

The policy's separate use of the term "action of a civil authority," as a condition of coverage further negates any argument that the ordinance or law exclusion applies to

19

deny coverage in this situation.  The Executive Orders which are at issue in this case are more aptly described as "actions of a civil authority,"  ad hoc mandates issued from the executive branch to deal with an extraordinary public emergency rather than "ordinance or laws" which are of general applicability and typically emanate from a legislative body. Defendant drafted this Policy and chose to employ different terms "ordinance or law" and "civil authority."  The terms cannot mean the same things, that is non-sensical and redundant.  And it would be absurd to read this policy as including the same type of action as both an event of coverage and of exclusion.

Finally, Defendant seems to simply assume that these Executive Orders encompassed under its imprecise use of "ordinance or law" without any support or authority. In fact, this Court has held that "[m]ost executive orders 'are not judicially enforceable in private civil suits.'" *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers,* 176 F. Supp. 3d 839, 847 (D. Minn. 2016), amended, No. CV 13-2262 (JRT/LIB), 2017 WL 740994 (D. Minn. Feb. 24, 2017) (citing *In re Surface Mining Regulation Litig*., 627 F.2d 1346, 1357 (D.C.Cir.1980). "The exception is when an executive order (1) possesses a 'specific foundation in congressional action,' and 'the force and effect of law,' and (2) was 'intended' by the [Executive] to be 'a legal framework enforceable by private civil action,' as opposed to a 'managerial tool for implementing the [Executive]'s personal ... policies.' *Id.*

Because Defendant has chosen not to define the terms "ordinance or law," uses internally inconsistent language throughout the Policy – including the use of "civil authority" – and have not shown that the Orders creating the Plaintiff's loss are

encompassed by this exclusion, Plaintiff suggests that the Court must find that this exclusion does not apply or, at least, is ambiguous and thus construed in the Plaintiff's favor.

### d.      Plaintiff also has a Loss Covered by Civil Authority Coverage

Defendant correctly anticipated that Plaintiff may invoke the policies' civil authority coverage in furtherance of his claims. Plaintiff's policies allow him to recover "actual loss of Business Income…caused by action of civil authority that prohibits access" to the property. In order for this coverage to apply, access to the area must be prohibited by civil authority as a result of damage and the covered property must be within a mile from the damaged property and the action of the civil authority is taken in response to dangerous physical conditions resulting from the damage (or the action is taken to enable a civil authority to have unimpeded access to the damaged property).

Here the cause of the loss was the Governor's Executive Orders prohibiting social contact within certain types of establishments – most relevant for this case – hair salons and barbershops.  As Plaintiff's insured properties are the exact type enumerated in those orders, there can be no doubt that the requisite location element is met. Unsurprisingly, Defendant points to the Plaintiff not providing any location of "physical damage" as being dispositive to this coverage.

In *Assurance Co. of America v. BBB Service Co., Inc.,* a court in Georgia was faced with interpreting a similarly-worded clause as the one at issue in this case. *Assurance Co. of America v. BBB Service Co., Inc.,* 265 S.E.2d 7 (Ga. Ct. App. 2003). There the court determined that the clause contained two requirements: 1)  that the loss

21

was caused by a civil authority action; and 2) that the civil authority action which prohibited access was due to the direct physical loss of or damage to property other than the premises. *Id.* at 8. The civil authority at issue in the *Assurance* case was an evacuation order issued by the governor due to an impending hurricane. The court accepted that the damage caused by hurricane winds during the effective term of the evacuation order showed damage to other property. *Id.* The insured provided evidence of damage that had been caused days earlier by the same storm in other places in the United States – this allowed the Court to determine that the basis for the evacuation was actual damage to property other than the insured premises.

Here, there is ample evidence of physical damage – not only in Minnesota – but in the nation at large. In is declaration of Peacetime Emergency, Governor Walz noted to detection of the disease in the United States, "including fourteen in Minnesota." Ex. Or. 20-01. Further, the Governor recognized that "[c]onfirmed cases of COVID-19 in Minnesota are rapidly increasing." Ex. Or. 20-04. As Minnesotans watched the destruction of the disease progress in New York and California, there was no doubt that the disease was causing physical damage to nearly everything in its path. Plaintiff's allegations in the Complaint support the application of the civil authority clause in Plaintiff's policies and thus the Court must deny Defendant's Motion to Dismiss.

### e.  Known-Loss Doctrine is Inapplicable

The known loss doctrine does not apply in this case and therefore, does not bar Plaintiff from business income coverage. The known loss doctrine is "based on the idea that insurance cannot be issued for a loss in which there is no longer any risk." *Sand*

*Companies, Inc. v. Gorham Housing Partners III,* LLP, No. A10–113, 2010 WL 5154378, at *4–5 (Minn. Ct. App. Dec. 21, 2010) (citing *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 924-25 n. 6 (Minn.1983)). The known loss doctrine applies in the absence of a known-injury-or-damage provision in the contract itself." *Sand Companies, Inc. v. Gorham Housing Partners III, LLP*, No. A10-113, 2010 WL 5154378 at *8 (D. Minn. Dec. 21, 2010) (quoting *Travelers Cas. & Surety Co. v. Dormitory Auth. State of New York*, 732 F.Supp. 347, 362 (S.D.N.Y.2010)). Here, a known-injury-or-damage provision in the Policies exists. These policies include an all-risk coverage endorsement BP 00 03 07 13, which generates endorsements providing that the Insurer shall "pay for direct physical loss of or damage to Covered Property … [including but not limited to] the actual loss of business income you sustain due to the necessary suspension of your operations during a period of restoration."  The issue in this case is "whether a particular provision in the contract barred coverage." *Id*. at *7. Such a provision does not. In fact, the provision provides coverage. Because the policies include a known-injury-or-damage provision, the known loss doctrine does not apply.

The known loss doctrine provides "where the loss has occurred prior to the *application* for insurance, the relevant question is ... whether the parties, particularly the insured, knew of the loss at the time of application...." *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 924-25 n. 6 (Minn.1983). However, Plaintiff did not apply for insurance coverage in April 2020 – he simply renewed his insurance coverage. Minnesota law provides that "a policy would be void if at the time of the application the applicant attempted to *retroactively* insure a known loss." *Franklin v. Carpenter*, 309 Minn. 419,

424 (Minn. 1976) (emphasis added). That is not the case here. Plaintiff has been covered by Defendant insurance policies since 2019 and renewed the policy on April 2, 2020. Plaintiff was not retroactively seeking coverage – he was already covered and was simply renewing the policy.

Here, the known loss doctrine does not apply and therefore, does not bar Plaintiff from business income coverage.

## IV.    CONCLUSION

Therefore, because Plaintiff has plausibly pleaded a covered loss to his property as detailed above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss and construe the policy language in favor of coverage.

Dated:  June 26, 2020                     Respectfully submitted,

                                          _s/Daniel E. Gustafson_____
                                          Daniel E. Gustafson (#202241)
                                          Amanda M. Williams (#341691)
                                          Mary M. Nikolai (#400354)
                                          **GUSTAFSON GLUEK PLLC**
                                          Canadian Pacific Plaza
                                          120 South 6th Street, Suite 2600
                                          Minneapolis, MN 55402
                                          Telephone: (612) 333-8844
                                          dgustafson@gustafsongluek.com
                                          awilliams@gustafsongluek.com
                                          mnikolai@gustafsongluek.com

                                          Dennis Stewart
                                          **GUSTAFSON GLUEK PLLC**
                                          600 B Street
                                          17th Floor
                                          San Diego, CA 92101
                                          Telephone: (619) 595-3200
                                          dstewart@gustafsongluek.com

Patrick W. Michenfelder (#024207X)
Chad A. Throndset (#0261191)
**THRONDSET MICHENFELDER, LLC**
Cornerstone Building
One Central Avenue West, Suite 101
St. Michael, MN 55376
Telephone: (763) 515-6110
pat@throndsetlaw.com
chad@throndsetlaw.com

Yvonne M. Flaherty (#267600)
**LOCKRIDGE GRINDAL NAUEN, P.L.L.P.**
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
ymflaherty@locklaw.com

*Attorneys for Plaintiff*