UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH SEIFERT d/b/a THE HAIR PLACE and HARMAR BARBERS, INC., *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>IMT INSURANCE COMPANY,<br><br>Defendant. | Civil No. 20-1102 (JRT/DTS)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Amanda M. Williams, Daniel E. Gustafson, and Mary M. Nikolai, **GUSTAFSON GLUEK PLLC,** 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; Dennis Stewart, **GUSTAFSON GLUEK PLLC,** 600 B Street, San Diego, CA 92101; Chad Throndset and Patrick W. Michenfelder, **THRONDSET MICHENFELDER LLC,** One Central Avenue West, Suite 203, St. Michael, MN 55376; and Yvonne M. Flaherty, **LOCKRIDGE GRINDAL NAUEN PLLP,** 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, for plaintiffs.

Shayne M. Hamann, Gregory J. Duncan, and Steven J. Erffmeyer, **ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA PA,** 81 South Ninth Street, Suite 500, Minneapolis, MN 55402, for defendant.

Plaintiffs ("Seifert") filed this action to collect lost business income, as a result of the coronavirus-related and government-mandated closure of Seifert's hair salon and barbershop, which he alleges is covered under insurance policies issued by Defendant IMT Insurance Co. ("IMT"). IMT filed a Motion to Dismiss, claiming that the insurance policies

only cover losses attributable to direct physical loss or damage, not a businessowner's mere loss of use of an insured property, and that the virus or bacteria exclusion precludes any otherwise qualifying loss or damage. Because Seifert does not plausibly allege any direct physical loss or damage to the properties, or plausibly demonstrate that the virus or bacteria exclusion would not preclude coverage given the facts he does allege, the Court will grant IMT's Motion to Dismiss.

## BACKGROUND

### I. THE PANDEMIC

Seifert owns and runs a hair salon, The Hair Place, and a barbershop, Harmar Barbers, Inc. (Compl. ¶¶ 1–2, May 6, 2020, Docket No. 1.) On March 13, 2020, Minnesota Governor Tim Walz declared a peacetime emergency in response to the spread of the novel coronavirus and issued several Emergency Executive Orders, one of which mandated the closure of salons and barbershops.[1] (*Id.* ¶ 20.) As a result of the Orders, Seifert had to suspend all business operations. (*Id.* ¶ 4.) Subsequently, he contacted his independent insurance broker, an authorized IMT agent, in late March to file a claim for lost business income. (*Id.* ¶ 27.) Seifert was advised that his losses were not covered by the insurance policies. (*Id.* ¶¶ 5, 27.)

---

[1] *See* Minn. Emergency Exec. Order No. 20-08 at 1 (Mar. 18, 2020), https://mn.gov/governor/assets/Filed%20EO-20-08_Clarifying%20Public%20Accommodations_tcm1055-423784.pdf.

## II. THE POLICIES

### A. COVERAGE

Seifert entered into insurance policies with IMT on March 25, 2019 and renewed both policies on April 2, 2020. (*Id.* ¶¶ 3, 11–12, 15; Aff. of Shayne M. Hamman ("Hamman Aff.") ¶¶ 3–6, May 29, 2020, Docket No. 13.)[2] Each policy contains a Businessowners Coverage Form, which covers "direct physical loss of or damage to Covered Property at the premises described." (Hamman Aff. ¶¶ 3–6, Ex. A ("Policy") at 77, Ex. B at 207, Ex. C at 363, and Ex. D at 526, May 29, 2020, Docket No. 13-1.)[3] The policies also insure against lost Business Income:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" . . . . The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Policy at 82.) "Covered Causes of Loss" are defined as "[d]irect physical loss[es] unless the loss is excluded." (*Id.* at 78.)

---

[2] In reviewing a motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). As such, it may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)).

[3] From this point forward, the Court will simply cite to Ex. A, as all the policies are identical.

Finally, the policies offer Civil Authority coverage. (*Id.* at 85.) This coverage is triggered when a Covered Cause of Loss causes damage to nearby property other than the insured property and, as a consequence, a civil authority prohibits access to the insured property because of "dangerous physical conditions resulting from the damage or . . . to enable a civil authority to have unimpeded access to the damaged property." (*Id.*) If triggered, Civil Authority coverage would also insure against lost business income. (*Id.*)

### B. EXCLUSIONS

The Businessowners policies insure against "all risk" except for risks that are expressly excluded. (*See* Compl. ¶¶ 14–15.) The prefatory language of the exclusions section states that IMT "will not pay for loss or damage caused directly or indirectly" by an excluded event. (Policy at 93.) The prefatory language also includes an anti-concurrent causation clause, stating that any such loss or damage "is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (*Id.*) Finally, the policy contains a Virus or Bacteria Exclusion, which precludes coverage for any loss or damage associated with a "virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 96.)

### III. PROCEDURAL BACKGROUND

On May 6, 2020, Seifert filed his Complaint, alleging breach of contract and seeking declaratory and monetary relief. (Compl. ¶¶ 37–48.) In response, IMT filed a Motion to

Dismiss pursuant to Rule 12(b)(6), arguing that 1) Seifert failed to satisfy the condition precedent of filing a formal claim; 2) Seifert failed to plead sufficient facts alleging lost business income caused by a direct physical loss of or damage to his properties, 3) various exclusions precluded coverage, and 4) the known-loss doctrine precluded any claim of loss  (Mot. Dismiss, May 29, 2020, Docket No. 9.)

## DISCUSSION

### I.  STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *See Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor.  *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true, it is not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops

short of the line between possibility and plausibility," and therefore must be dismissed. *Iqbal*, 556 U.S. at 678.

## II. ANALYSIS

Under Minnesota law, the interpretation of an insurance contract is a question of law. *Horizon III Real Estate v. Hartford Fire Ins. Co.*, 186 F. Supp. 2d 1000, 1004 (D. Minn. 2002). "[A] court will compare the allegations in the complaint in the underlying action with the relevant language in the insurance policy." *Midwest Family Mut. Ins. Co. v. Justkyle, Inc.*, No. 17-1632, 2018 WL 3475486, at *5 (D. Minn. July 19, 2018) (quoting *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997)). "While the insured bears the initial burden of demonstrating coverage, the insurer carries the burden of establishing the applicability of exclusions." *Id.* at *6 (quoting *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006)).

### A. COVERAGE UNDER THE POLICIES[4]

#### 1. Business Income

The insurance policies cover the loss of business income when business operations are suspended because of "direct physical loss of or damage to property at the described

---

[4] As a preliminary matter, IMT argues that it is under no obligation to perform under the policies, as Seifert failed to satisfy the condition precedent with respect to properly submitting a formal claim. IMT also argues that the known-loss doctrine precludes coverage. Both arguments are unavailing. With respect to the condition precedent, not only did Seifert promptly contact his insurance broker, an authorized IMT agent, after the closure of his businesses, but he also satis-
*(footnote continued on next page)*

premises." (Policy at 82.)  Minnesota caselaw does not require a showing of structural damage to qualify for coverage.  "Direct physical loss" can also be found when business premises are contaminated by asbestos, *see Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997), or smoke, *see Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001).  In short, "[i]t is sufficient to show that the "insured property is injured in some way," which may be something less than structural damage or some other tangible injury.  *See Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, No. 97-2185, 2002 WL 31185884, at *3 (D. Minn. Sept. 27, 2002), *aff'd*, 356 F.3d 850 (8th Cir. 2004).

However, this is not to say that a qualifying loss is established "*whenever* property cannot be used for its intended purpose."  *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (emphasis in original).  Actual physical contamination of the insured property is still required.  *See Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 837–38 (8th Cir. 2006).  Simply claiming "mere loss of use or function" is not enough.  *Pentair*, 400 F.3d at 616; *see also Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349, 352 (8th Cir. 1986).

---

fied the procedure for reporting a claim, as outlined on IMT's website.  With respect to the known-loss doctrine, it is a fraud-based defense, but fraud is not being disputed here, so the doctrine is inapplicable.  *See Guar. Title, Inc. v. Alterra Excess & Surplus Ins. Co.*, No. 14-0028, 2014 WL 12601039, at *3 (D. Minn. Nov. 19, 2014) (citing *Sand Cos., Inc. v. Gorham Hous. Partners III, LLP*, No. A10–113, 2010 WL 5154378, at *7 (Minn. Ct. App. Dec. 21, 2010).

Seifert claims that his inability to provide haircuts and salon services is indistinguishable from the intangible physical loss in *General Mills*. However, in *General Mills*, there was smoke contamination of the insured's property; here, Seifert has not pleaded any facts demonstrating his businesses were similarly contaminated by the novel coronavirus. That is, he only asserts that he suffered an economic loss unrelated to an actual infiltration and contamination of the properties.

Seifert also asserts that another case, *Cedar Bluff*, stands for the proposition that physical loss can be found when an external force renders property unsafe or unusable, even when the property remains physically unchanged. Yet, he fails to mention that the *Cedar Bluff* court held that undamaged panels of siding were covered only because adjoining panels were damaged, and repairs could not be made without resulting in a color mismatch. *See Cedar Bluff Townhome Condo. Ass'n, Inc. v. Am. Family Mut. Ins. Co.*, 857 N.W.2d 290, 295 (Minn. 2014). That is, there was still a physical loss; the dispute only concerned the extent of the loss.

As such, Seifert's claims fail to fall within the permissible realm of "direct physical loss," as he cannot allege facts showing his properties were actually contaminated or damaged by the coronavirus.[5] In fact, Siefert explicitly states that his business losses were

---

[5] *Accord 10E, LLC v. Travelers Indem. Co.*, No. 20-04418, 2020 WL 5359653, at *5 (C.D. Cal. Sept. 2, 2020) (granting defendant's motion to dismiss for failing to allege that the virus had infected or entered the premises); *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615, 2020 WL 5051581,
*(footnote continued on next page)*

"not because of the presence of a virus" at the premises.  (Compl. ¶ 24.)  Instead, the Orders are alleged to be the sole cause of his losses, but governmental action prohibiting the use of property, by itself, is not enough.  *See Source Food*, 465 F.3d at 838.  As a result, Seifert does not plead a plausible claim for relief.  Accordingly, the Court will grant IMT's Motion to Dismiss with respect to Business Income coverage under the policies.

### 2. Civil Authority

The policies also provide coverage when a Covered Cause of Loss causes damage to another's property and a civil authority then prohibits access to the insured property.  Thus, a direct physical loss of or damage to property is again required to trigger coverage.

As such, if a complaint does not plead facts alleging some actual contamination or damage to property to a neighboring property, then the complaint does not state a plausible claim to relief.  Here, Seifert does not plead any facts demonstrating that the coronavirus contaminated properties neighboring his businesses, or that a civil authority then prohibited him from entering his insured properties because of any such contamination.  Accordingly, the Court will grant IMT's Motion to Dismiss with respect to Civil Authority coverage under the policies.

---

at *7 (S.D. Fla. Aug. 26, 2020) (same); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 20-461, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020) (finding that pleading mere economic loss was not a plausible claim).  *But cf. Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-03127, 2020 WL 4692385, at *5 (W.D. Mo. Aug. 12, 2020) (denying defendant's motion to dismiss because plaintiffs alleged that COVID-19 had physically entered the premises).

**B. VIRUS OR BACTERIA EXCLUSION[6]**

The virus exclusion precludes coverage for any loss or damage caused indirectly or directly by any "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Policy at 96.) Furthermore, as defined by the prefatory language applicable to all excluded events, the virus exclusion is an anti-concurrent loss provision. "When an anti-concurrent loss provision is triggered . . . courts need not inquire into which of a covered or excluded loss was the proximate cause of the damage, but simply exclude coverage where any portion of the loss was caused or contributed to by an excluded loss." *Ken Johnson Props., LLC v. Harleysville Worcester Summary Ins. Co.*, No. 12-1582, 2013 WL 5487444, at *12 (D. Minn. Sept. 30, 2013). Thus, the virus exclusion would extend "to all losses where a virus is part of the causal chain." *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.,* No. 20-11655, 2020 WL 5258484, at *8–9 (E.D. Mich. Sept. 3, 2020).

Here, Seifert alleges that his business losses are the direct and proximate result of "Governmental Pandemic Closure Orders; orders that have been put in place in an effort

---

[6] In addition to the Virus or Bacteria Exclusion, IMT argues that the Pollution Exclusion and the Ordinance or Law Exclusion also apply. However, exclusions are to be construed narrowly and strictly against the insurer. *Grinnell Mut. Reinsurance Co. v. Villanueva*, 37 F. Supp. 3d 1043, 1046 (D. Minn. 2014), *aff'd*, 798 F.3d 1146 (8th Cir. 2015). As such, IMT's attempt to place the coronavirus in the same category of pollutants as "smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste" is unavailing. (Policy at 100). Additionally, while the Ordinance or Law Exclusion might be applicable, IMT offers nothing to demonstrate whether the Emergency Executive Order specifically closing barbershops and hair salons had the force of law. As such, the Court will also construe this exclusion against IMT.

-10-

to control the spread of the COVID-19 Pandemic." (Compl. ¶ 24.) Pursuant to the anti-concurrent loss provision, if a virus is any part of the causal chain causing a loss, then the loss is not covered. Accordingly, the Court will grant IMT's Motion to Dismiss with respect to the Virus or Bacteria Exclusion.

## CONCLUSION

Although Seifert has failed to plead factual content to allow the Court to draw the reasonable inference that Seifert is entitled to coverage for lost business income, it is possible that his claims may survive if properly alleged.[7] Accordingly, the Court will grant Seifert twenty days to amend the Complaint to address the deficiencies in pleading identified above.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 9] is **GRANTED without prejudice**. If no Amended Complaint is filed within twenty days from the date of this Order, the Court will dismiss the case with prejudice.

---

[7] *See, e.g., Studio 417*, 2020 WL 4692385, at *5–6; *see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-3213, 2020 WL 5525171, at *8 (N.D. Cal. Sept. 14, 2020) ("The Court [recognizes] that the law concerning business interruption coverage linked to the COVID-19 pandemic is very much in development . . . and [will] grant leave to amend.").

DATED: October16, 2020                  _____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                                  Chief Judge
                                          United States District Court