**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

KENNETH SEIFERT d/b/a THE HAIR PLACE
and HARMAR BARBERS, INC., *individually*
*and on behalf of all others similarly*
*situated*,

                                                    Civil No. 20-1102 (JRT/DTS)

                                    Plaintiffs,

v.                                                  **MEMORANDUM OPINION AND ORDER**
                                                    **DENYING IN PART AND GRANTING IN**
                                                    **PART DEFENDANT'S MOTION TO**
IMT INSURANCE COMPANY,                              **DISMISS**

                                    Defendant.

---

Amanda M. Williams and Daniel E. Gustafson, **GUSTAFSON GLUEK PLLC,** 120
South Sixth Street, Suite 2600, Minneapolis, MN 55402; and Yvonne M.
Flaherty, **LOCKRIDGE GRINDAL NAUEN PLLP,** 100 Washington Avenue
South, Suite 2200, Minneapolis, MN 55401, for plaintiffs.

Shayne M. Hamann, **ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA
PA,** 81 South Ninth Street, Suite 500, Minneapolis, MN 55402, for
defendant.

Plaintiff Kenneth Seifert filed this action to collect lost business income after

executive orders mandated the closure of his hair salon and barbershop due to the rising

number of COVID-19 cases in Minnesota, lost income alleged to be covered under the

insurance policies he purchased from Defendant IMT Insurance Co. ("IMT").  IMT has filed

a Motion to Dismiss, claiming that the policies do not cover Seifert's losses and that, even

if they did, the virus exclusion contained in the policies would preclude recovery.

Because the business income provision of the policies insures against a direct physical loss of property, as when government mandates deprive a business owner of legally occupying or using the premises and property as intended, Seifert plausibly alleges that he is entitled to coverage. Additionally, because the virus exclusion is only triggered by a direct or indirect contamination of the covered premises, the exclusion has no effect with respect to Seifert's alleged losses. However, coverage under the civil authority provision of the policies is unavailable and the doctrine of regulatory estoppel is inapplicable. Thus, the Court will grant in part and deny in part IMT's Motion to Dismiss.

## BACKGROUND

### I. FACTUAL BACKGROUND

In an earlier decision, the Court laid out the relevant facts in detail. *See Seifert v. IMT Ins. Co.*, 495 F. Supp. 3d 747, 749–50 (D. Minn. 2020). As Seifert has not alleged any new facts in the Amended Complaint, the Court will briefly summarize them here.

Seifert's businesses, The Hair Place and Harmar Barbers, Inc., were ordered to close by two executive orders issued in response to the growing number of COVID-19 cases in Minnesota.[1] (Am. Compl. ¶¶ 1–2, 4, 27–28, Nov. 10, 2020, Docket No. 36.) As a

---

[1]   Minn. Emergency Exec. Order No. 20-08 (Mar. 18, 2020), https://mn.gov/governor/assets/Filed%20EO-20-08_Clarifying%20Public%20Accommodations_tcm1055-423784.pdf; *see also* Minn. Emergency Exec. Order No. 20-04 (Mar. 16, 2020), https://mn.gov/governor/assets/2020_03_16_EO_20_04_Bars_Restaurants_tcm1055-423380.pdf.

-2-

result, Seifert contacted an authorized IMT agent to file a claim for lost business income. (*Id.* ¶ 35.)  Seifert was advised that his losses were not covered.  (*Id.* ¶¶ 5, 35.)

The policies at issue contain a business income provision, which protects against the actual loss of business income sustained due to a "suspension of your 'operations' during the 'period of restoration' . . . caused by direct physical loss of or damage to property . . . caused by or result[ing] from a Covered Cause of Loss."  (Aff. of Shayne M. Hamman ¶ 3, Ex. A ("Policy") at 82, May 29, 2020, Docket No. 13-1.[2])  "Covered Cause[] of Loss" is defined as a "[d]irect physical loss unless the loss is excluded."  (Policy at 78.) "Operations" is defined as "business activities occurring at the described premises."  (*Id.* at 109.)  And "period of restoration" is the period of time beginning "after the time of direct physical loss or damage" and ending on the date when "the property at the described premises should be repaired, rebuilt or replaced" or when "business is resumed at a new permanent location."  (*Id.* at 109–10.)

The policies also contain a civil authority provision, which protects against the actual loss of business income when "a Covered Cause of Loss causes damage to property" other than the insured property and, as a consequence, "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage" and the civil authority has acted either in response to dangerous physical

---

[2] The four policies issued to Seifert are identical.  As such, the Court will simply cite to Exhibit A instead of all four exhibits.

conditions from the damage or to have unimpeded access to the damaged property. (*Id.* at 85.)

Finally, the policies contain a virus exclusion, which precludes coverage for loss or damage caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 96.) Such loss or damage, whether caused directly or indirectly, is excluded "regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . . whether or not the loss event results in widespread damage or affects a substantial area." (*Id.* at 93.)

## II.    PROCEDURAL BACKGROUND

On May 6, 2020, Seifert filed a Complaint, alleging breach of contract and seeking declaratory and monetary relief. (Compl. ¶¶ 37–48, May 6, 2020, Docket No. 1.) In response, IMT filed a Motion to Dismiss pursuant to Rule of Civil Procedure 12(b)(6). (Mot. Dismiss, May 29, 2020, Docket No. 9.) The Court granted IMT's Motion without prejudice to allow Seifert an opportunity to amend the pleadings, especially as the law concerning business interruption coverage with respect to the COVID-19 pandemic was very much in development. *Seifert*, 495 F. Supp. 3d at 753; *id.* at 753 n.7.

On November 4, 2020, Seifert filed a Motion for Extension of Time,[3] (Mot. Extension, Nov. 4, 2020, Docket No. 29), and then an Amended Complaint on November

---

[3] Under Rule 6(b), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1). "[M]otions to extend are to be

-4-

10, 2020, alleging three Counts: (1) Breach of Contract; (2) Declaration of Rights; and (3) Regulatory Estoppel, (Am. Compl. ¶¶ 57–76.) IMT has filed a second Motion to Dismiss pursuant to Rule 12(b)(6). (Mot. Dismiss, Nov. 24, 2020, Docket No. 37.)

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

Although the Court accepts the complaint's factual allegations as true, it is not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atl. Corp.*

---

liberally permitted . . . to secure the just, speedy, and inexpensive determination of every action." *Baden v. Craig-Hallum, Inc.,* 115 F.R.D. 582, 585 (D. Minn. 1987) (citation omitted); *see also* 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1165 (4th ed.) (stating that a request will normally be granted absent bad faith or prejudice).

Here, Seifert proceeded to file the Amended Complaint late without having received permission first. However, the Court finds that there was good cause for the six-day enlargement and that IMT was not prejudiced by it. Further, the Court held a hearing and has fully considered the pleadings and briefs, and deciding a case on the merits is always preferable to dismissing an action based on a procedural technicality. As such, the Court will grant Seifert's Motion for Extension of Time.

*v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## II.  STATE LAW

Under Minnesota law, the interpretation of an insurance contract is a question of law.  *Horizon III Real Estate v. Hartford Fire Ins. Co.*, 186 F. Supp. 2d 1000, 1004 (D. Minn. 2002).  "[A] court will compare the allegations in the complaint in the underlying action with the relevant language in the insurance policy."  *Midwest Family Mut. Ins. Co. v. Justkyle, Inc.*, No. 17-1632, 2018 WL 3475486, at *5 (D. Minn. July 19, 2018) (quoting *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997)).  "While the insured bears the initial burden of demonstrating coverage, the insurer carries the burden of establishing the applicability of exclusions."  *Id.* at *6 (quoting *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006)).

## III. ANALYSIS

### A.  Coverage

The Amended Complaint presents a more nuanced theory concerning the key policy language in dispute, "direct physical loss of or damage to property."  Because

Seifert does not allege any damage to his properties, only the terms "direct physical loss of" are relevant.[4]

The Court interpreted this language before when granting IMT's motion to dismiss the Complaint; but, when doing so, the Court relied on Minnesota and Eighth Circuit cases that grappled with slightly different language: "direct physical loss **to** property." *See Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 835–36 (8th Cir. 2006); *Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 151 (Minn. Ct. App. 2001); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 297 (Minn. Ct. App. 1997); *see also Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 614, 616 (8th Cir. 2005) (reading a policy as if it said "direct physical loss to" instead of "direct physical loss of"). As Seifert correctly notes, because of the disjunctive separating "of" and "to," these words must mean different things. Thus, the more precise question considered now is whether "of" makes a difference when assessing the plausibility of Seifert's claims.

As the policies do not define what "direct physical loss of" means, the Court will give the words their plain and ordinary meanings. *See, e.g.*, *Farm Bureau Mut. Ins. Co. v. Earthsoils, Inc.*, 812 N.W.2d 873, 876 (Minn. Ct. App. 2012). "Direct" means "stemming

---

[4] Seifert does not plead any facts demonstrating that any nearby properties were damaged either. Because only damage triggers civil authority coverage, the Court will grant IMT's Motion to Dismiss with respect to Counts I and II as they relate to the civil authority provision.

immediately from a source."[5]   "Physical" is "having material existence[;] perceptible especially through the senses and subject to the laws of nature."[6]   These two words modify "loss," which means "destruction" or "deprivation."[7]   As such, the policies insure against an immediate and materially perceptible destruction or deprivation of property. However, to give the full phrase meaning, there is also the word "of" to consider.

As courts have stated when considering similar business interruption claims, "to" and "of" are not interchangeable; that is, they mean distinctly different things.  *See, e.g.*, *Seoul Taco Holdings, LLC v. Cincinnati Ins. Co.*, No. 20-1249, 2021 WL 1889866, at *6 (E.D. Mo. May 11, 2021); *T & E Chicago LLC v. Cincinnati Ins. Co.*, 20-4001, 2020 WL 6801845, at *5 (N.D. Ill. Nov. 19, 2020); *see also Source Food*, 465 F.3d at 838 ("[T]he policy's use of the word 'to' in the policy language 'direct physical loss *to* property' is significant. [Plaintiff's] argument might be stronger if the policy's language included the word 'of' rather than 'to,' as in 'direct physical loss *of* property[.]'").

 "To" is a preposition indicating an action toward a thing reached, or contact.[8] "Of," on the other hand, is a preposition indicating "belonging or a possessive

[5]  Merriam-Webster,  https://www.merriam-webster.com/dictionary/direct  (last visited May 21, 2021).

[6]  Merriam-Webster, https://www.merriam-webster.com/dictionary/physical (last visited May 21, 2021).

[7]  Merriam-Webster,  https://www.merriam-webster.com/dictionary/loss  (last visited May 21, 2021).

[8]  Merriam-Webster,  https://www.merriam-webster.com/dictionary/to  (last visited May 21, 2021).

relationship,"[9] with "possessive" meaning "manifesting possession," or occupying and controlling property.[10] Thus, "direct physical loss to" involves a force acting toward and reaching property, a contact that leads to an immediate and materially perceptible destruction or deprivation of the property itself. *See, e.g.*, *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-2211, 2020 WL 7078735, at *7 (D. Kan. Dec. 3, 2020). "Direct physical loss of," however, is a severing of an owner's possession of property, one which causes an immediate and materially perceptible inability to occupy and control property as intended.

It is undisputed that the executive orders had the effect of depriving business owners of the ability to occupy and control business properties as intended. But a question remains: What type of deprivation is required to trigger coverage? Neither the Eighth Circuit nor Minnesota courts have answered this directly, as they have not interpreted the exact phrase, "direct physical loss of."[11] However, when interpreting "direct physical loss to" property, Minnesota courts have concluded that "direct physical

---

[9]   Merriam-Webster, https://www.merriam-webster.com/dictionary/of (last visited May 21, 2021).

[10]   Merriam-Webster, https://www.merriam-webster.com/dictionary/possession (last visited May 21, 2021); Merriam-Webster, https://www.merriam-webster.com/dictionary/possessive (last visited May 21, 2021).

[11] As mentioned above, the *Pentair* court read the "loss of" policy language as if it actually read "loss to." 400 F.3d at 614, 616. Because the significance of "of" was not questioned or established in *Pentair*, and because the *Source Food* court then explicitly stated that the analysis would likely be different if a policy uses "of" rather than "to," 465 F.3d at 838, the Court finds that the Eighth Circuit has not yet established binding precedent with respect to the precise question considered here.

loss" can exist without structural damage or tangible injury to property; "it is sufficient to show that the insured property is injured in some way." *General Mills*, 622 N.W.2d at 152 (citing *Sentinel*, 563 N.W.2d at 300 (intangible contamination of property)). As such, a qualifying loss may arise from "an impairment of function and value" to property, as when legal regulations stymie a business's ability to lawfully provide its products. *Id.* (citing *Marshall Produce Co. v. St. Paul Fire & Marine Ins. Co.*, 98 N.W.2d 280, 293 (Minn. 1959)). Additionally, a qualifying loss may arise if a building's function is seriously impaired and the property is rendered useless. *Sentinel*, 563 N.W.2d at 300.

Here, with "of" instead of "to" in play, the situation is not completely analogous. However, the Court concludes that Minnesota courts would extend the same reasoning when interpreting "direct physical loss of" and only require some injury to an owner's ability to occupy and control property as intended, not an absolute or permanent dispossession.[12] The Court further concludes that if a government deems a property dangerous to use and an owner is thus unable to lawfully realize the business property's physical space to provide services, Minnesota courts would find this to be a cognizable impairment of function and value. In sum, the Court concludes that a plaintiff would

---

[12] When the Minnesota Supreme Court has not decided an issue, federal courts must predict how it would resolve the issue, and while intermediate appeals court decisions are not binding, they are not to be disregarded unless the Court is convinced that the Minnesota Supreme Court would decide otherwise. *Harleysville Ins. Co. v. Physical Distribution Servs., Inc.*, 716 F.3d 451, 457 (8th Cir. 2013). The Court is not convinced of such here.

plausibly demonstrate a direct physical loss of property by alleging that executive orders forced a business to close because the property was deemed dangerous to use and its owner was thereby deprived of lawfully occupying and controlling the premises to provide services within it. *Accord In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, No. 20-2005, 2021 WL 679109, at *8–10 (N.D. Ill. Feb. 22, 2021) ("Plaintiffs did suffer a direct 'physical' loss of property on their premises . . . the pandemic-caused shutdown orders do impose a *physical* limit . . . Plaintiffs cannot use (or cannot fully use) the physical space.").[13]

Seifert alleges just this, for he asserts that his businesses were forced to close by executive orders issued in response to the pandemic and, as a result, the businesses suffered an impairment of function and value, as he was deprived of occupying and controlling them to provide hair salon and barbershop services. Thus, the Court finds that Seifert plausibly alleges direct physical losses of his property. Additionally, the business activities that were suspended while the executive orders were in effect certainly qualify

---

[13] Courts have come to the same conclusion when interpreting policy language that involves "direct physical loss to." *See Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 20-265, 2020 WL 7249624, at *10 (E.D. Va. Dec. 9, 2020) ("[I]t is plausible that Plaintiff's experienced a direct physical loss when the property was deemed uninhabitable, inaccessible, and dangerous to use by the Executive Orders[.]"); *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 800–01 (W.D. Mo. 2020) ("[A] physical loss may occur when the property is uninhabitable or unusable for its intended purpose.").

as "operations" under the policies.[14]  As IMT has allegedly refused to cover these losses, the Court will deny IMT's Motion to Dismiss with respect to Counts I and II as they relate to the business income provision.

### B. Exclusions

The virus exclusion precludes coverage for any loss or damage caused indirectly or directly by any virus that induces or is capable of inducing physical distress, illness or disease.[15]  Furthermore, the virus exclusion is an anti-concurrent loss provision, which "exclude[s] coverage where any portion of the loss was caused or contributed to by an excluded loss."  *Ken Johnson Props., LLC v. Harleysville Worcester Summary Ins. Co.*, No. 12-1582, 2013 WL 5487444, at *12 (D. Minn. Sept. 30, 2013).

---

[14] With respect to the "period of restoration," the Court notes that this period ends when "the property at the described premises should [have been] repaired, rebuilt or replaced." (Policy at 110).  "Replace" means, as relevant here, "to restore to a former place or position," which would include restoring an owner's full manifestation of possession over property to occupy and control it as intended.  Merriam-Webster, https://www.merriam-webster.com/dictionary/replace (last visited May 21, 2021),

[15] In addition to the virus exclusion, IMT argues that the ordinance or law exclusion applies.  However, IMT offers nothing to demonstrate that the executive orders specifically closing barbershops and hair salons had the force of law.  Moreover, this exclusion likely only applies to ordinances or laws regulating the construction or repair of a property, or land use.  *See, e.g.*, *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Southeast.*, No. 20-2740, 2021 WL 289547, at *8–9 (E.D. Pa. Jan. 28, 2021)*.*  As such, IMT has not meet its burden to demonstrate that the ordinance or law exclusion applies.

IMT also argues that the consequential losses exclusion would preclude coverage resulting from any loss of use.  However, as the policies specifically insure against lost business income, interpreting "loss of use" to sweep in such income would undermine the central purpose of the policy provisions in dispute.  As such, the Court finds this argument to be unavailing.

Seifert alleges that his businesses would be open, "if not for the Governmental Closure Orders." (Am. Compl. ¶ 33.) Thus, he alleges a single cause of loss: the executive orders. Of course, the orders were issued in response to the growing cases of COVID-19 in Minnesota, which in turn were a result of the coronavirus spreading within the community. Yet, as the Amended Complaint demonstrates, when the insurance industry proposed this exclusion to state regulators, they were intent on excluding coverage "involving contamination by disease-causing agents" at the property. [16] (Am. Compl. ¶ 51).

The Court concludes that the policies' virus exclusion is intended to preclude coverage only when there has been some direct or indirect contamination of the business premises, not whenever a virus is circulating in a community and a government acts to curb its spread by means of executive orders of general applicability. *Accord Henderson Rd. Rest. Sys., Inc. v. Zurich Am. Ins. Co.*, No. 20-1239, 2021 WL 168422, at *14–15 (N.D. Ohio Jan. 19, 2021); *see also Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, 489 F. Supp. 3d 1297, 1302–03 (M.D. Fla. 2020) (noting that no prior cases considering

---

[16] Seifert also alleges that IMT should be estopped from invoking the virus exclusion because the industry made misrepresentations when they proposed it. However, the Minnesota Supreme Court has rejected the regulatory estoppel doctrine when an exclusion is clear and unambiguous, as it is here. *Anderson v. Minnesota Ins. Guar. Ass'n*, 534 N.W.2d 706, 709 (Minn. 1995); *see also SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 682 (N.D. Tex. 1996), *aff'd sub nom. SnyderGeneral Corp. v. Cont'l Ins. Co.*, 133 F.3d 373 (5th Cir. 1998). As such, the Court will grant IMT's Motion to Dismiss with respect to Count III.

virus exclusions considered "the unique circumstances of the effect COVID-19 has had on our society—a distinction this Court considers significant"). Extending the causal chain beyond situations involving a direct or indirect contamination of business premises would extend the chain too far; in this case, it would transform a virus exclusion into a government-order or pandemic exclusion, which is not what the parties intended. As such, the operative question is whether Seifert's losses involved a viral contamination at the covered premises.

No. Seifert's business income losses are all alleged to have been caused by executive orders, ones which shuttered every barbershop and hair salon irrespective of whether they had been contaminated. Moreover, Seifert does not allege that his businesses suffered any actual contamination or that staff or patrons either contracted or circulated the coronavirus. The Court therefore finds that Seifert's losses, as alleged, are not precluded by the virus exclusion and will deny IMT's Motion to Dismiss in this regard.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Seifert's Motion for Extension of Time [Docket No. 29] is **GRANTED**;

2. IMT's Motion to Dismiss [Docket No. 37] is **DENIED in part and GRANTED in part** as follows:

a.  The Motion is denied with respect to Counts I and II as they relate to coverage

under the business income provision;

b.  The Motion is granted with respect to Counts I and II as they relate to coverage

under the civil authority provision; and

c.  The Motion is granted with respect to Count III.


DATED:  June 2, 2021
at Minneapolis, Minnesota.

_____

JOHN R. TUNHEIM
Chief Judge
United States District Court